✓ FILED    ___ ENTERED
___ LOGGED    ___ RECEIVED

3:21 pm, Nov 27 2023
AT BALTIMORE
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____ Deputy

**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*

Jefferson Gray
Assistant United States Attorney
JGray1@usdoj.gov

Suite 400
36 S. Charles Street
Baltimore, MD 21201-3119

DIRECT: 410-209-4915
MAIN: 410-209-4800
FAX: 410-962-9947

November 15, 2023

Robert C. Bonsib, Esq.
Marcus & Bonsib
6411 Ivy Lane
Greenbelt, Maryland 20770-1405

    Re:    *United States v. Francesco Illiano*
             Criminal No. ELH-22-0449

Dear Counsel:

    This letter, together with the Sealed Supplement, confirms the plea agreement (hereafter "Agreement") that has been offered to Francesco Illiano (hereafter, "the Defendant") by the Department of Justice's Tax Division and the United States Attorney's Office for the District of Maryland (hereafter "this Office"). If the Defendant accepts this offer, please have him execute it in the spaces provided below. If this offer has not been accepted by **5:00 p.m. on Monday, November 20, 2023**, it will be deemed withdrawn. The terms of the Agreement are as follows.

### Offense of Conviction

    1.    The Defendant agrees to plead guilty to Count Three of the Indictment charging him with willfully failing to pay over the trust fund taxes due and owing to the IRS on behalf of the employees of Napoli Inc. for the fourth quarter of 2015, in violation of Title 26, United States Code, Section 7202. The Defendant admits that he is, in fact, guilty of this offense and will so advise the Court.

### Elements of the Offense

    2.    The elements of the offense to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are that on or about the time alleged in the Indictment, in the District of Maryland:

- First, the Defendant had a duty to collect, account for, and pay over a tax;

- Second, he failed to collect, truthfully account for, or pay over the tax; and

- Third, he acted willfully.

### Penalties

3. The maximum penalties provided by statute for the offense to which the Defendant is pleading guilty is as follows: five years of imprisonment and a fine of up to $250,000.00, or twice the gross pecuniary gain or gross pecuniary loss resulting from the offense, whichever is greater, as well as the costs of prosecution. In addition, the Defendant must pay $100 as a special assessment pursuant to 18 U.S.C. § 3013. This amount will be due and should be paid at or before the time of sentencing.

   a. Prison: If the Court orders a term of imprisonment, the Bureau of Prisons has sole discretion in designating the institution at which it will be served.

   b. Supervised Release: If the Court orders a term of supervised release, and the Defendant violates the conditions of supervised release, the Court may order the Defendant returned to custody to serve a term of imprisonment as permitted by statute, followed by an additional term of supervised release.

   c. Restitution: The Court may order the Defendant to pay restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.

   d. Payment: If a fine or restitution is imposed, it shall be payable immediately, unless the Court orders otherwise pursuant to 18 U.S.C. § 3572(d). The Defendant may be required to pay interest if the fine is not paid when due.

   e. Collection of Debts: If the Court imposes a fine or restitution, this Office's Financial Litigation Unit will be responsible for collecting the debt. If the Court establishes a schedule of payments, the Defendant agrees that: (1) the full amount of the fine or restitution is nonetheless due and owing immediately; (2) the schedule of payments is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment; and (3) the United States may fully employ all powers to collect on the total amount of the debt as provided by law. Until the debt is paid, the Defendant agrees to disclose all assets in which the Defendant has any interest or over which the Defendant exercises direct or indirect control, and to notify the United States if there is any material change in his financial circumstances. Until the money judgment is satisfied, the Defendant authorizes this Office to obtain a credit report in order to evaluate the Defendant's ability to pay, and to request and review the Defendant's federal and state income tax returns. The Defendant agrees to complete and sign a copy of IRS Form 8821 (relating to the voluntary disclosure of federal tax return information) and a financial statement in a form provided by this Office.

### Waiver of Rights

4. The Defendant understands that by entering into this Agreement he surrenders certain rights as outlined below:

2

a. If the Defendant had persisted in his plea of not guilty, he would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, the Government, and the Court all agreed.

b. If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

c. If the Defendant went to trial, the Government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the Government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in his defense, however, he would have the subpoena power of the Court to compel the witnesses to attend.

d. The Defendant would have the right to testify in his own defense if he so chose, and he would have the right to refuse to testify. If he chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from his decision not to testify.

e. If the Defendant were found guilty after a trial, he would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges against him. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

f. By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that he may have to answer the Court's questions both about the rights he is giving up and about the facts of his case. Any statements the Defendant makes during such a hearing would not be admissible against him during a trial except in a criminal proceeding for perjury or false statement.

g. If the Court accepts the Defendant's plea of guilty, there will be no further trial or proceeding of any kind, and the Court will find him guilty.

h. By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status. The Defendant recognizes that if he is not a citizen of the United States, pleading guilty may have consequences with respect to his immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding,

however, and the Defendant understands that no one, including his attorney or the Court, can predict with certainty the effect of a conviction on immigration status. Defendant nevertheless affirms that he wants to plead guilty regardless of any potential immigration consequences.

### Advisory Sentencing Guidelines Apply

5. The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984, 18 U.S.C. §§ 3551-3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)), and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

### Factual and Advisory Guidelines Stipulation

6. This Office and the Defendant understand, agree, and stipulate to the Statement of Facts set forth in Attachment A which is incorporated by reference herein. This Office and the Defendant further agree that:

   a. The applicable base offense level is **twenty-two (22)**, pursuant to the United States Sentencing Guidelines ("U.S.S.G.") §§ 2T1.6(a) and 2T4.1(I) (Tax Table), because the tax loss resulting from the charged conduct and any other relevant conduct as defined in U.S.S.G. § 1B1.3 (see also ¶ 13 below) was more than $1,500,000 but was less than $3,500,000.

   b. This Office does not oppose a **two (2)** level reduction in the Defendant's adjusted offense level pursuant to U.S.S.G. § 3E1.1(a), based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for his criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional **one (1)** level decrease in recognition of the Defendant's timely notification of the Defendant's intention to enter a plea of guilty. This Office may oppose *any* adjustment for acceptance of responsibility if the Defendant (a) fails to admit each and every item in the factual stipulation; (b) denies involvement in the offense; (c) gives conflicting statements about his involvement in the offense; (d) is untruthful with the Court, this Office, or the United States Probation Office; (e) obstructs or attempts to obstruct justice prior to sentencing; (f) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (g) attempts to withdraw his plea of guilty. If the defendant receives the total potential **three (3)** level reduction, his final adjusted offense level is expected to be a level **nineteen (19)**.

   c. The parties understand that, effective November 1, 2023, the U.S. Sentencing Guidelines have been amended to provide for an additional 2-level reduction in offense level if the Defendant meets the requirements of the amended § 4C1.1(a) (Adjustment for Certain Zero-Point Offenders). If that provision applies, the anticipated final offense level is **seventeen (17)**.

4

7. The Defendant understands that there is no agreement as to his criminal history or criminal history category, and that his criminal history could alter his offense level if he is a Career Offender or if the instant offense was a part of a pattern of criminal conduct from which he derived a substantial portion of his income.

8. This Office and the Defendant agree that with respect to the calculation of criminal history and the advisory guidelines range, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines will be raised or are in dispute.

### Rule 11(c)(1)(C) Plea

9. The parties stipulate and agree pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) that a sentence in Zone B of the U.S.S.G. Sentencing Table, that is, of ***not more than*** 14 months of imprisonment in the custody of the Bureau of Prisons and ***not less than*** a term of probation along with a condition or combination of conditions requiring intermittent confinement, community confinement, or home detention as provided in U.S.S.G. § 5C1.1(c)(3) (Imposition of a Term of Imprisonment), is the appropriate disposition of this case taking into consideration the nature and circumstances of the offense, the Defendant's criminal history, and all of the other factors set forth in 18 U.S.C. § 3553(a). This Agreement does not affect the Court's discretion to impose any lawful term of supervised release or fine or to set any lawful conditions of probation or supervised release. In the event that the Court rejects this Agreement, except under the circumstances noted below, either party may elect to declare the Agreement null and void. Should the Defendant so elect, the Defendant will be afforded the opportunity to withdraw his plea pursuant to the provisions of Federal Rule of Criminal Procedure 11(c)(5). The parties agree that if the Court finds that the Defendant engaged in obstructive or unlawful behavior and/or failed to acknowledge personal responsibility as set forth herein, neither the Court nor the Government will be bound by the specific sentence contained in this Agreement, and the Defendant will not be able to withdraw his plea.

### Obligations of the Parties

10. At the time of sentencing, the government shall be permitted to recommend a sentence of up to 14 months of imprisonment and the Defendant shall be permitted to recommend a sentence consistent with the range described in paragraph 9 of this Agreement. This Office and the Defendant reserve the right to bring to the Court's attention all information with respect to the Defendant's background, character, and conduct that this Office or the Defendant deem relevant to sentencing, including the conduct that is the subject of any counts of the Indictment. At the time of sentencing, this Office will move to dismiss any open counts against the Defendant.

### Waiver of Appeal

11. In exchange for the concessions made by this Office and the Defendant in this Agreement, this Office and the Defendant waive their rights to appeal as follows:

5

      a.     The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or any other statute or constitutional provision, to appeal the Defendant's conviction on any ground whatsoever. This includes a waiver of all right to appeal the Defendant's conviction on the ground that the statute(s) to which the Defendant is pleading guilty is unconstitutional, or on the ground that the admitted conduct does not fall within the scope of the statute(s), to the extent that such challenges legally can be waived.

      b.     The Defendant and this Office knowingly and expressly waive all rights conferred by 18 U.S.C. § 3742 to appeal whatever sentence is imposed (including any term of imprisonment, fine, term of supervised release, or order of restitution) for any reason (including the establishment of the advisory sentencing guidelines range, the determination of the Defendant's criminal history, the weighing of the sentencing factors, and any constitutional challenges to the calculation and imposition of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release), except the Defendant reserves the right to appeal any sentence that exceeds the statutory maximum.

      c.     The Defendant waives any and all rights under the Freedom of Information Act (FOIA) relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from the Government or any investigating agency.

      d.     The Defendant agrees that with respect to any and all dismissed charges he is not a "prevailing party" within the meaning of the "Hyde Amendment," Section 617. P.L. 105-119 (Nov 26, 1997), and will not file any claim under that law.

### Defendant's Conduct Prior to Sentencing and Breach

12.     Between now and the date of the sentencing, the Defendant will not engage in conduct that constitutes obstruction of justice under U.S.S.G. § 3C1.1; will not violate any federal, state, or local law; will acknowledge guilt to the probation officer and the Court; will be truthful in any statement to the Court, this Office, law enforcement agents, and probation officers; will cooperate in the preparation of the presentence report; will not move to withdraw from the plea of guilty or from this Agreement; and will not participate, in any way, in the business of preparing and filing tax returns, with the exception of tax returns for the Defendant or for any corporations owned by the defendant.

13.     If the Defendant engages in conduct prior to sentencing that violates the above paragraph of this Agreement, and the Court subsequently finds that such a violation has occurred by a preponderance of the evidence, then: (i) this Office will be free from its obligations under this Agreement; (ii) this Office may make sentencing arguments and recommendations different from those set out in this Agreement; and (iii) in any criminal or civil proceeding, this Office will be free to use against the Defendant all statements made by the Defendant and any of the information or materials provided by the Defendant, including statements, information, and materials provided pursuant to this Agreement, and statements made during proceedings before the Court pursuant to Rule 11 of the Federal Rules of Criminal Procedure. A determination that this Office is released from its obligations under this Agreement will not permit the Defendant to withdraw the guilty

plea. The Defendant acknowledges that the Defendant may not withdraw the Defendant's guilty plea if the Court finds that the Defendant breached the Agreement. In that event, neither the Court nor the Government will be bound by the specific sentence or sentencing range agreed and stipulated to herein.

### Restitution

14. The Defendant agrees to the entry of a restitution order pursuant to 18 U.S.C. § 3663(a)(3) in the amount of **$1,373,790** which is the amount of the tax owing for the count to which he is pleading guilty, together with any other relevant conduct as defined in U.S.S.G. § 1B1.3, which applies to all conduct that, among other things, was part of the same course of conduct or a common scheme or plan as the offense of conviction. The Defendant agrees that, pursuant to 18 U.S.C. §§ 3663 and 3663A and 3563(b)(2) and 3583(d), the Court may order restitution of the full amount of the actual, total loss caused by the offense conduct set forth in the factual stipulation. The total amount of restitution shall be due immediately and shall be ordered to be paid forthwith. Defendant is entitled to receive credit for restitution paid pursuant to this plea agreement against those assessed civil tax liabilities due and owing for the same periods for which restitution was ordered, and is entitled to receive credit for any payments made to satisfy those assessed civil tax liabilities due and owing for the same periods for which restitution was ordered. Any payment schedule imposed by the Court establishes only a minimum obligation. Defendant will make a good faith effort to pay any restitution. Regardless of Defendant's compliance, any payment schedule does not limit the United States' ability to collect additional amounts from Defendant through all available collection remedies at any time.

The Defendant further agrees that the Defendant will fully disclose to this Office, the probation officer, and to the Court, subject to the penalty of perjury, all information (including but not limited to copies of all relevant bank and financial records) regarding the current location and prior disposition of all funds obtained as a result of the criminal conduct set forth in the factual stipulation. The Defendant further agrees to take all reasonable steps to retrieve or repatriate any such funds and to make them available for restitution. If the Defendant does not fulfill this provision, it will be considered a material breach of this Agreement, and this Office may seek to be relieved of its obligations under this Agreement. The Defendant also understands that he is obligated to notify the U.S. Probation Officer (USPO) and the U.S. Attorney's Office of any change in his financial circumstances in the future – even after he is released from imprisonment, or following the conclusion of his term of supervised release – that could materially affect his ability to make payments towards his restitution obligation.

15. If the Court orders the defendant to pay restitution to the IRS for his criminal conduct, either directly as part of the sentence or as a condition of supervised release, the IRS will use the restitution order as the basis for a civil assessment pursuant to 26 U.S.C. § 6201(a)(4). The defendant does not have the right to challenge the amount of this assessment. 26 U.S.C. § 6201(a)(4)(C). Neither the existence of a restitution payment schedule not the defendant's timely payment of restitution according to that schedule will preclude the IRS from

administrative collection of the restitution-based assessment, including levy and distraint under 26 U.S.C. § 6331.

### Tax Liability

16. The Defendant understands that this Agreement does not resolve any civil tax liability that the Defendant may have, and that this Agreement is with the Department of Justice's Tax Division and the United States Attorney's Office, not with the Internal Revenue Service. The Internal Revenue Service is not a party to this Agreement and remains free to pursue any and all lawful remedies it may have. The Defendant agrees, however, as a special condition of supervised release: (a) to execute a final and conclusive "Closing Agreement" with the Internal Revenue Service, pursuant to section 7121 of the Internal Revenue Code, in order to resolve tax liabilities for tax years 2011 through 2018; (b) to provide a complete and accurate financial statement, under penalty of perjury, to the United States that shall identify all assets valued at $1,000 or more owned or held directly or indirectly by the Defendant, as well as all such assets transferred by the Defendant to any third parties since 2015, including the location of said assets and identities of the third parties; and (c) to pay to the Internal Revenue Service all additional taxes, interest and penalties that the Internal Revenue Service may determine that the Defendant owes for the tax years 2012 through 2017, pursuant to the aforesaid Closing Agreement.

### Court Not a Party

17. The Court is not a party to this Agreement. The sentence to be imposed is within the sole discretion of the Court. The Court is not bound by the Sentencing Guidelines stipulation in this Agreement. The Court will determine the facts relevant to sentencing. The Court is not required to accept any recommendation or stipulation of the parties. The Court has the power to impose a sentence up to the maximum penalty allowed by law. If the Court makes sentencing findings different from those stipulated in this Agreement, or if the Court imposes any sentence up to the maximum allowed by statute, the Defendant will remain bound to fulfill all of the obligations under this Agreement. Neither the prosecutor, defense counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

### Entire Agreement

18. This letter supersedes any prior understandings, promises, or conditions between this Office and the Defendant and, together with the Sealed Supplement, constitutes the complete plea agreement in this case. The Defendant acknowledges that there are no other agreements, promises, undertakings or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement and none will be entered into unless in writing and signed by all parties.

If the Defendant fully accepts each and every term and condition of this agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Erek L. Barron
United States Attorney

Jefferson M. Gray
Assistant U.S. Attorney

Shawn Noud
Trial Attorney, Tax Division

I have read this Agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

11-16-2023
Date

Francesco Illiano

I am Francesco Illiano's attorney. I have carefully reviewed every part of this Agreement, including the Sealed Supplement, with him. He advises me that he understands and accepts its terms. To my knowledge, his decision to enter into this Agreement is informed and voluntary.

11-16-2023
Date

Robert C. Bonsib, Esq.

## ATTACHMENT A

## STATEMENT OF FACTS: FRANCESCO ILLIANO

*The United States and the Defendant agree that if this case proceeded to trial, the United States could produce sufficient testimonial and documentary evidence to prove the following facts beyond a reasonable doubt. The parties agree that these are not necessarily all of the facts that could be proved if this case proceeded to trial.*

At all times material here, Defendant Francesco Illiano ("Defendant") was a resident of Mount Airy, Maryland. The Defendant owned and operated several businesses, including two restaurants and a property management company that employed over 100 individuals. The first of these businesses, Napoli Inc. d/b/a New York J&P Pizza, was a restaurant in Mount Airy, Maryland, that provided pizza, pasta, and other food. The Defendant was its President, Chief Executive Officer, and 100 percent shareholder. Another business owned by Illiano, Company 2, was a limited liability company that operated a restaurant in Mount Airy called the Mount Airy Inn. The Defendant was the Chief Executive Officer of Company 2 and he and his wife were majority owners. Finally, Company 3 was a property management and building company in Mount Airy, Maryland; the Defendant was its President. In addition, further back in the past, the Defendant had owned and operated five Green Turtle restaurants in Maryland. Payroll functions for these five companies were handled by GT Management Corporation, which the Defendant owned.

In or about the summer of 2013, the Internal Revenue Service ("IRS") assessed a Trust Fund Recovery Penalty against the Defendant for his failure to pay more than $1.4 million in trust fund taxes (income, Social Security, and Medicare taxes owed by employees but withheld by the employer) held by GT Management Corporation. These trust fund taxes were withheld from employees of the five Green Turtle restaurants the Defendant owned from the third quarter of 2011 through the first quarter of 2012.

The Defendant was responsible for collecting, accounting for on IRS Forms 941, and paying over to the IRS trust fund taxes for employees of Napoli Inc., Company 2, and Company 3. From at least April 2014 to at least July 2016, the Defendant exercised significant control over the financial affairs of these three companies. Among other things, the Defendant exercised signatory authority over the company bank accounts; decided which business expenses to pay and when to pay them; provided financial and payroll information to an accountant for the purpose of preparing employment tax returns; and authorized the accountant to file tax return information on behalf of his companies.

From the second quarter of 2014 through the first quarter of 2016, the Defendant willfully failed to pay over employment taxes totaling about $120,242 owed by Napoli Inc., including $32,428 in trust fund taxes which it had withheld from its employees' pay. From the first quarter of 2015 through the fourth quarter of 2015, the Defendant also willfully failed to pay over about $77,307 in employment taxes owed by Company 2, including about $35,012 in trust fund taxes withheld from its employees' pay. From the third quarter of 2014 through the second quarter of

10

2016, the Defendant further willfully failed to pay over about $46,263 in employment taxes owed by Company 3, including about $27,300 in trust fund taxes withheld from its employees' pay.

In every quarter for which the Defendant's companies owed trust fund taxes in 2014 and 2015, each of these companies had significantly greater deposits into their bank accounts than the amount of their tax liabilities, which the Defendant could have used to pay part or all of the sums owed to the IRS.

On or about the dates listed in the table below, in the district of Maryland, the Defendant willfully failed to pay over the trust fund taxes indicated.

| Entity / Indictment Count | Quarter | Filing Due Date | Trust Fund Taxes Due and Owing | Employer Portion of Trust Fund Taxes Due and Owing | Total Employment Taxes Due and Owing |
|---|---|---|---|---|---|
| Napoli Inc. (Count One) | 2nd Quarter 2015 | July 31, 2015 | $4,986 | $15,292 | $20,278 |
| Napoli Inc. (Count Two) | 3rd Quarter 2015 | October 31, 2015 | $5,222 | $18,070 | $23,292 |
| Napoli Inc. (Count Three) | 4th Quarter 2015 | January 31, 2016 | $22,220 | $18,102 | $40,322 |
| Company 2 (Count Four) | 3rd Quarter 2015 | October 31, 2015 | $13,252 | $16,595 | $29,847 |
| Company 2 (Count Five) | 4th Quarter 2015 | January 31, 2016 | $21,760 | $16,030 | $37,790 |
| Company 3 (Count Six) | 1st Quarter 2015 | April 30, 2015 | $4,424 | $1,765 | $6,189 |
| Company 3 (Count Seven) | 2nd Quarter 2015 | July 31, 2015 | $5,941 | $2,306 | $8,247 |
| Company 3 (Count Eight) | 3rd Quarter 2015 | October 31, 2015 | $2,560 | $1,242 | $3,802 |

| Entity / Indictment Count | Quarter | Filing Due Date | Trust Fund Taxes Due and Owing | Employer Portion of Trust Fund Taxes Due and Owing | Total Employment Taxes Due and Owing |
|---|---|---|---|---|---|
| Company 3 (Count Nine) | 2nd Quarter 2016 | July 31, 2016 | $9,232 | $9,232 | $18,464 |

In addition to the losses of $188,232 resulting from the conduct charged in the individual counts of the indictment set forth above covering a 12-month period in 2015-2016, the Defendant's further related criminal conduct over the entire relevant time period of five years and three months (63 months) between April 1, 2011 and July 31, 2016 resulted in an additional tax loss of $1,541,134  Thus, the total tax loss resulting from the defendant's charged and other relevant conduct relating to his failure to pay over required trust fund taxes and withheld employee taxes during the indicated 63-month time period was $1,729,366.

SO STIPULATED:

Jefferson M. Gray
Assistant U.S. Attorney

Francesco Illiano
Defendant

Shawn T. Noud
Trial Attorney, Tax Division
Department of Justice

Robert C. Bonsib, Esq.
Counsel for Defendant